## Neel *et al.* *versus* McElhenny *et al.*

1. S. claimed title to land against J. by twenty-one years adverse holding. J. gave in evidence a lease of the land by him within the twenty-one years, in which S. recognised J.'s title. Declarations of J. made after the twenty-one years, were evidence to show that he was holding as trustee for S., and not by absolute title.

2. J. permitting S. to hold the land as his own for twenty-one years under an alleged trust, made the title of S. perfect.

3. Where one holds land for himself, taking the profits to himself exclusively for twenty-one years, with no evidence to stamp upon it a different character, the presumption, except as to co-tenants, is that the possession is adverse.

October 2d and 3d 1871. Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the District Court of *Allegheny county:* No. 15, to October and November Term 1870.

This was an action of ejectment for 100 acres of land in Mifflin township, brought by William Neel, Samuel C. Neel, Thomas Neel, the minor children of John Neel, deceased, and others, against John McElhenny and others, minor children of Mary McElhenny, deceased. Under the rule of the District Court the plaintiffs filed their abstract of title, viz. :—

The plaintiffs claimed :

1. As children and heirs of Samuel C. Neel, deceased, he having been a son and heir at law of John Neel, who died March 22d 1801.

2. As heirs at law of Samuel C. Neel, who held by a deed of partition dated March 29th 1810, between Samuel C. Neel, John Neel, and others, heirs of John Neel.

3. By virtue of the adverse possession of Samuel C. Neel and as heirs of John Neel, deceased.

The defendants pleaded, "not guilty," and filed their abstract of title denying every specification of the plaintiffs' claim.

They also specified in their abstract as follows :—

John Neel the elder died seised of the premises intestate in 1801, leaving a widow and seven children, of whom (General) John Neel was one.

By agreement of March 29th 1810 and June 11th 1811 of

[Neel *v.* McElhenny.]

widow and heirs, by which the property became vested in General John Neel.

Release, August 18th 1820, Samuel C. Neel to General John Neel.

Sheriff's deed, August 12th 1824, to Jordan Stewart for Samuel C. Neel's interest in the premises.

Sheriff's deeds, November 20th 1827, of General John Neel's interest in the premises to Uriah Applegate and Robert C. Thompson; assignment on Applegate's deed, December 3d 1836, to Thompson.

Deeds, March 1st and April 1st 1837, Thompson to General John Neel and George Kirkpatrick, and March 16th 1839, Kirkpatrick to General John Neel.

Deed, March 13th 1845, Jordan Stewart to General John Neel, for Samuel C. Neel's interest in the premises.

Lease, March 12th 1849, General John Neel to John and Thomas Neel, heirs of Samuel C. Neel, deceased, witnessed by William Neel and Samuel C. Neel, for the premises for three years and agreement of same date on same paper, between Samuel C. Neel and his sons John and Thomas Neel, for the personal property and keeping the family of Samuel C. Neel on the premises; this agreement witnessed by William and John Neel.

The Statute of Limitations.

The cause was tried March 3d 1869, before Kirkpatrick, J.

The plaintiffs gave evidence by a number of witnesses tending to show adverse possession of the premises by Samuel C. Neel, deceased, the father of some and grandfather of others of the plaintiffs, for some twenty-three years before his death, which occurred in 1850 or 1851. They also gave in evidence the agreement of March 20th 1810, between the widow and heirs of John Neel (the first), deceased, Samuel C. and General John Neel being two of them, by which they agreed to part the lands of the decedent into four lots; valued them and allotted them to four of the heirs; the premises in dispute having been allotted to General John; the allottees to pay the other heirs their shares of the valuation as stipulated in the agreement.

The plaintiffs having rested, the defendants gave in evidence a deed of confirmation of the foregoing partition, dated June 11th 1811, between the heirs; also, release, August 18th 1820, from Samuel C. Neel to General John Neel for the consideration of $350 of Samuel C.'s interest in the premises. They also gave in evidence the sheriff's deed to Stewart of Samuel's interest; deed, Stewart to John Neel, for same; sheriff's deed to Applegate and Thompson for John Neel's interest and their conveyances and George Kirpatrick's to John Neel as mentioned in the defendants' abstract of title. They gave evidence also tending to disprove the adverse possession of Samuel C. Neel and his successors.

The defendants gave in evidence a paper containing:—

[Neel *v.* McElhenny.]

1. Article of agreement dated March 12th 1849, between Samuel C. Neel of the first part, and John and Thomas Neel "sons of the said Samuel," of the other part, by which Samuel gave up and delivered to his sons all his personal property, consisting of farming stock and utensils and household furniture, for three years, "to take charge of and be under their control and management as they may think best," &c., in consideration of which the sons were "to take care of and provide for their four brothers * * * during the term above specified," &c. This agreement was witnessed by General John Neel.

2. Another agreement, viz. :—

"And further this Artickel of agreement Maid and agreed apon this twelth of March A D 1849 by and between John Neel of Mifflin Township, &c., of the first part, and John and Thomas Neels sunes of Samuel C. Neel of the other part all of the said Township of Mifflin, Witnesseth that the said John Neel of the first part, agrees to leese or Rent for the full Tarme of three yeares from the Date above all the lease land with the Buildings and improvements there on that the said Samuel C. Neel now occupies at this Time in concidration of the above priveleges of the above Des cribed place as the above agreement shewes the said John and Thomas Neels agrees to pay apurportionabel share of all taxes .per yeare During the tarm of three years from this Date in witness, &c.

JOHN NEEL.    [L.S.]
THOMAS NEEL.  [L.S.]
              [L.S.]

Signed sealed and delivered in presents of us
      SAMUEL C. NEEL
      WM. NEEL."

They gave in evidence a paper containing a notice dated December 25th 1851, from General John Neel, directed to Thomas Neel, W. W. West or John Bonater, and any others as occupying under Thomas Neel, to quit on the 1st of April 1852, the premises leased to Thomas Neel under the agreement of 1849; on which paper was a surrender in writing dated January 1st 1852, by John Bonneter to General John Neel, "under whose title and consent said Thomas Neel and W. W. West claims," &c., containing also a statement that General John Neel gave to Bonater possession of the premises, lease to be executed thereafter.

The plaintiffs in rebuttal called Thomas Neel, and proposed to prove by him the purpose for which the article of agreement exhibited on the part of the defendants, as between John Neel and Thomas Neel and others, was got up, and the reason of its getting up, for the purpose of showing why John Neel's name was to it at all: to show the condition of Samuel C. Neel at the

[Neel v. McElhenny.]

time, and showing his habits of life, and his want of attention to his family.

Also to prove a conversation the witness had with General John Neel relating to this property—General John Neel stating that he was simply holding this property in trust for the children of his brother Samuel C. Neel; for the purpose of showing that the titles exhibited by the defendants in this case were held merely in trust for Samuel C. Neel and his children.

Also, that he had a conversation with General John Neel, and that he held this property for the benefit of the witness and his brothers.

These offers were objected to by the defendants, rejected and several bills of exception sealed.

Samuel C. Neel testified: that he approached his uncle John Neel to purchase this property in question, about six months before the colonel died, which was about August 1867.

The plaintiffs proposed to prove by the witness, that on this occasion he saw his uncle and proposed to buy the property now in dispute; that he had refused to sell to him on account of the interests that his brothers had, stating that they were all interested alike, and that he could not give it to one any more than to another.

Witness was also asked to state, " in the settlement of your uncle Thomas's real estate, whether or not the title was not in the same condition as between Samuel C. Neel and your uncle John Neel."

J. M. Snodgrass having testified that he had had a conversation with General Neel relative to the premises, the plaintiffs' counsel proposed to prove by the witness that at the time he had this conversation with John Neel, he stated to him, if not in these words, in words to the effect, that he was holding this property for the sons of his brother Samuel C. Neel.

Samuel Gould was called and asked to state " whether or not you ever heard any declarations on the part of John Neel, relative to the difficulty that he had in securing this property for the children of Samuel C. Neel."

These offers were severally objected to by the defendants, rejected and bills of exception sealed.

The court refused points presented by the plaintiffs. These refusals with parts of the charge and rulings on questions of evidence were excepted to by the plaintiff; but it is not necessary to refer to any of them, except the third point, viz. :—

" Twenty-one years' possession, unmolested, without consideration shown, is to be presumed to be an adverse possession."

The verdict was for the defendants.

The plaintiffs sued out a writ of error and assigned twenty-seven errors.

The 10th, 11th, 12th, 13th, 15th, 16th and 18th were respectively the bills of exception on the questions of evidence as above given.

[Neel *v.* McElhenny.]

*J. R. Large*, for plaintiffs in error, cited Cummings *v.* Cummings, 5 W. & S. 552; Galbraith *v.* Elder, 8 Watts 103.

*T. Ewing* and *R. Woods*, for defendants in error, cited Porter *v.* Mayfield, 9 Harris 263; Robertson *v.* Robertson, 9 Watts 36; Barnet *v.* Dougherty, 8 Casey 371; Kellum *v.* Smith, 9 Id. 158; Lynch *v.* Cox, 11 Harris 265.

The opinion of the court was delivered, October 16th 1871, by
Agnew, J.—In this case but a single error deserves notice. It runs, however, throughout the assignments of error numbered as 11, 12, 13, 15, 16 and 18. Some of these standing alone are rather indefinite, but others can be sustained. The purpose of the offers contained in the bills therein set forth was to show the relation of John Neel as trustee for Samuel C. Neel his brother. It is quite possible the court below rejected the evidence of a trust upon the supposition that it was in violation of the provisions of the Act of 22d April 1856, because there was no writing to evidence it, and because it was barred by the proviso to the 6th section. But the purpose of the offer was not to claim title through the trust. The plaintiffs had rested their claims of title upon a possession of more than twenty-one years, under the Statute of Limitations, and to rebut the adverse character of that possession, the defendants had given in evidence a lease dated 12th March 1849, from Samuel C. and John Neel to John and Thomas Neel, sons of Samuel C. Neel. Though this paper bears date after the twenty-one years were alleged to have run against the title of John Neel, yet the inference to be drawn from it by a jury tended strongly to rebut the adverse character of Samuel C. Neel's previous possession. The question would very naturally arise, if Samuel claimed title in his own right, why did he join with John in the lease? But if John Neel were a trustee only of the legal title for Samuel, and admitted his relation, there would be nothing inconsistent in Samuel's joining with John in the lease; and it would not contradict the fact that Samuel was holding for himself during the previous period of twenty-one years, and, therefore, that his possession was adverse to any claim of title by John Neel for himself. Whatever might have been the power of Samuel to sustain himself under the trust alone, before the statute had closed against John; clearly if John suffered him to hold the land as his own under an alleged trust for the statutory period, the statute closed the door against John's title, and made perfect the title in Samuel. So far then as the lease had tended to contradict the adverse character of Samuel's possession, it was Samuel's right to rebut it by showing, by the admitted trust, that the instrument was not inconsistent with his previous possession in his own right. These offers should therefore have been received as rebutting evidence.

[Neel v. McElhenny.]

In connection with this, it was the intention of the plaintiffs, in their third point, the refusal of which is assigned as the 23d error, to ask the court to say to the jury that twenty-one years of unmolested possession, unqualified by any circumstances or considerations to the contrary, is to be presumed to be an adverse possession. It is very difficult to understand the point as drawn, and the judge therefore cannot be censured for declining it, especially in view of the rule of the court; but certainly where one holds a possession for himself, taking the profits of the land to himself exclusively for a period of twenty-one years, with nothing in the evidence to stamp upon it a different character, his possession is presumptively adverse to all others (excepting in the case of co-tenants), for he who holds for himself necessarily does not hold for another. The point when properly understood was important to the plaintiffs' case in furnishing a rule to the jury from which they might infer the adverse character of the possession of Samuel C. Neel. But it was the fault of the plaintiffs that the point was so obscurely drawn. For the reasons already given, however, the judgment is reversed, and a *venire facias de novo* is awarded.